1            UNITED STATES DISTRICT COURT
             SOUTHERN DISTRICT OF MISSISSIPPI
2                    SOUTHERN DIVISION

3

4    BUTCH OUSTALET, INC.                          PLAINTIFF

5    V.                          CIVIL ACTION NO: 1:08CV1487

6    RAY ANTHONY LEGGETT                           DEFENDANT

7

8

9     TRANSCRIPT OF HEARING ON MOTION FOR PRELIMINARY INJUNCTION

10

11            BEFORE HONORABLE LOUIS GUIROLA, JR.
                 UNITED STATES DISTRICT JUDGE

12

13

14                  DECEMBER 22, 2008
                   GULFPORT, MISSISSIPPI

15

16

17

18   COURT REPORTER:

19   TERI B. NORTON, RMR, FCRR
     2012 15TH STREET, SUITE 403
20   GULFPORT, MISSISSIPPI  39501
     (228) 563-1740

21

22

23

24

25

1    APPEARANCES:

2    REPRESENTING THE PLAINTIFF:

3            DORIS BOBADILLA, ESQUIRE
             GALLOWAY, JOHNSON, TOMPKINS, BURR AND SMITH
4            1213 31ST AVENUE
             GULFPORT, MISSISSIPPI  39501
5
             STEPHANIE DOVALINA, ESQUIRE
6            GALLOWAY, JOHNSON, TOMPKINS, BURR AND SMITH
             701 POYDRAS STREET, SUITE 4040
7            NEW ORLEANS, LOUISIANA  70139

8    REPRESENTING THE DEFENDANT:

9            LA QUETTA M. GOLDEN, ESQUIRE
             12311 ASHLEY DRIVE, SUITE D
10           GULFPORT, MISSISSIPPI  39503

11   ALSO PRESENT:  TRACI CASTILLE, FRANKE & SALLOUM

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1        **THE COURT:**  We have one matter before the Court this

2   morning.  Will the clerk please call the first case.

3        **DEPUTY CLERK:**  Butch Oustalet, Inc. versus Ray

4   Anthony Leggett, cause number 1:08cv1487.

5        **THE COURT:**  What says the plaintiff?

6        **MS. BOBADILLA:**  Doris Bobadilla representing Butch

7   Oustalet Ford, Incorporated.

8        **THE COURT:**  What says the defendant?

9        **MS. GOLDEN:**  Good morning, Your Honor.  La Quetta

10  Golden, attorney, representing the defendant, Ray Leggett.

11        **THE COURT:**  Very well.  Let me first take up a matter

12  that has been brought to my attention on behalf of the

13  defendant, Mr. Leggett, who is here answering the motion for a

14  temporary injunction.  This morning Mr. Leggett's counsel, Ms.

15  Golden, I presume, you filed on behalf of Mr. Leggett a motion

16  to dismiss this matter for lack of jurisdiction.  The motion

17  was filed at 9:23 this morning.  Ms. Bobadilla, have you had an

18  opportunity to read the motion or to consider it?

19        **MS. BOBADILLA:**  Your Honor, I have had an opportunity

20  to review the motion.  However, I certainly would ask for an

21  opportunity to reply in writing within the procedures.

22        **THE COURT:**  Well, of course, jurisdiction is a

23  threshold matter, and this Court either does or does not have

24  the power to consider your request for an injunction, and I am

25  going to want to hear from counsel regarding, now that Ms.

1   Golden has raised the question of jurisdiction, regarding

2   whether or not this Court has any authority to issue an

3   injunction.  Were you prepared to do that?

4        **MS. BOBADILLA:**  Your Honor, if I may address in my

5   arguments the issues of how we have jurisdiction.  However, my

6   caution is that responding to Mr. Leggett's motion to dismiss

7   without proper addressing of all of its points would waive my

8   arguments, and honestly, as we have only had approximately

9   about an hour and change in order to prepare an opposition, it

10  would be wholly insufficient, I believe.  So thus I can

11  certainly address the jurisdictional issues in my argument in

12  chief regarding the motion for injunctive relief, but I would

13  certainly ask this Court for an opportunity to brief and oppose

14  the motion to dismiss in writing.

15       **MS. GOLDEN:**  To which, Your Honor, we object.  We

16  believe that if we are allowed to go first to show and prove

17  the procedural elements of our motion to dismiss, then the

18  substantive portion of their injunction will be moot, if the

19  Court grants our motion to dismiss.

20       **THE COURT:**  I think you are correct.  If the Court

21  does not have jurisdiction, then I will not go near the merits.

22  That is a threshold question.  And of course, it is up to the

23  plaintiff who has brought this petition for injunctive relief

24  to convince the Court that there is federal question

25  jurisdiction.  I think that is what you have alleged in your

1    complaint, that there is a federal question here, rather than

2    diversity.

3          **MS. BOBADILLA:**  Yes, Your Honor, we have, and I

4    believe that is the basis of our jurisdiction, but again,

5    obviously because of the seriousness of this matter, Your

6    Honor, I believe that I would be doing my client a disservice

7    if I did not properly address each and every aspect of the

8    defendant's motion to dismiss and do so in writing in order to

9    address all of the issues.

10         Frankly, the reason why we bring this particular motion in

11   the time frame that we do is based on Mr. Leggett's threats

12   regarding a deadline of December 22nd at 6:00 p.m. today.  That

13   is the reason as to why we bring the complaint for injunctive

14   relief, the motion, in such haste, and also -- but basically

15   just received the motion to dismiss today.  What we would ask

16   Your Honor, if amenable, is to be allowed to oppose the motion

17   to dismiss in writing.  However, in the interim we request an

18   interim order from this Court to allow us that opportunity in

19   writing, but also order the defendant not to release this

20   information or the substance of this litigation and the tape

21   until such motion has been adequately opposed in writing before

22   this Court within the allowable time.

23         **MS. GOLDEN:**  Your Honor, my client was just served

24   with this hearing two days ago.  So in haste I had to work on

25   the motion to dismiss over the weekend, Saturday, Sunday, and

1  this morning in order to get it filed this morning by 9:30.

2  So, again, based upon what I have researched, if the Court

3  doesn't have jurisdiction, we can't get into the merits of her

4  injunction.  Even if the Court wanted to, if the Court finds

5  that it does not have jurisdiction, in re or in personam

6  jurisdiction, we can't proceed on the substantive portion.  And

7  I believe that once we present our motion to dismiss, I am

8  confident that the Court, after hearing what we have to

9  present, will dismiss their application for injunction.

10         **THE COURT:**  All right.  It may, however, be time

11  better spent, since we are here, to go ahead and permit the

12  plaintiff to present whatever evidence they intend to, and then

13  the Court will consider the jurisdictional question, and it may

14  be unnecessary for me to reach the merits or to make a ruling

15  on the merits if the Court does not have jurisdiction.  But

16  since the plaintiff only received the motion to dismiss today,

17  and I know that you have been under time constraints as well,

18  it may be a more fair process if we go ahead and get the

19  plaintiffs', whatever evidence they intend to proceed with,

20  including a demonstration, if you will, that there is at least

21  a prima facie showing that the Court has some jurisdiction over

22  this matter, and then I will give you an opportunity to

23  properly respond in writing, and then reach a conclusion on

24  what I consider to be the threshold question here, and that is

25  whether or not the Court has the authority to issue any orders

1      whatsoever.  All right?

2              **MS. BOBADILLA:**  We are amenable to that.  We would

3      ask, however, that the courtroom be held in seal.  I believe

4      there are individuals here that are not parties to this

5      litigation, and because of the sensitivity of this issue, we

6      would ask that the courtroom be cleared of anyone who is not

7      either a party or a counsel on behalf of Butch Oustalet or Mr.

8      Leggett.

9              **MS. GOLDEN:**  The person that is in the courtroom to

10     your left is Mrs. Leggett, Mr. Leggett's wife.

11             **MS. BOBADILLA:**  And I believe, Your Honor, that we

12     have also a representative here.

13             **THE COURT:**  Mr. Harris is here on my request.

14             **MS. BOBADILLA:**  Yes, sir, understood.

15             **THE COURT:**  That motion is denied.  I am ever vigil

16     that these matters, whatever matters occur in court, remain

17     transparent and open to the public, and it would be under the

18     most unusual of circumstances that the Court would close those

19     doors and not allow the public to understand and to review what

20     is going on behind these doors.  So that motion to seal the

21     court is denied.

22             **MS. BOBADILLA:**  Thank you, Your Honor.

23             **THE COURT:**  All right.  If you would, please, from

24     the lectern -- do you intend to call any witnesses?

25             **MS. BOBADILLA:**  Your Honor, we have two affidavits to

1    submit before you, and if I may submit those and approach.

2              **THE COURT:**  You may.  Have you shown them to counsel?

3              **MS. BOBADILLA:**  Yes, Your Honor, I have.

4              **MS. GOLDEN:**  Oh, I thought she was going to approach.

5              **THE COURT:**  I think she is going to approach with the

6    affidavits.

7              **MS. GOLDEN:**  Which we oppose those affidavits.  They

8    were filed at the time of the application for the injunction.

9              **MS. BOBADILLA:**  Your Honor, you can see that we have

10   actually had those secured and dated as of today very shortly

11   before arriving before this Court.  We will certainly

12   supplement the record and request that they be considered by

13   this Court in reference to our complaint for injunctive relief.

14             **MS. GOLDEN:**  We believe that those were filed

15   immediately after they reviewed our motion to dismiss.  And if

16   I may, Your Honor --

17             **THE COURT:**  Let me finish reading the affidavits.  Go

18   ahead, Ms. Golden.

19             **MS. GOLDEN:**  If I may, one of the affidavits is

20   submitted by Larry Clark.  Larry Clark is the perpetrator of

21   the discrimination complaint that will be filed by Mr. Leggett.

22   He is also the person that is in the tape, in the videotape,

23   who is the main perpetrator.  So we object to any credence that

24   he would have to state in any affidavit.

25             **THE COURT:**  Well, to the extent that these affidavits

1   shed any light as to the allegations contained in the petition

2   for injunction, I am going to allow them to be marked and

3   admitted into the record.  Again, in an effort not only to be

4   transparent but to be complete, I think that all of this

5   material should be included in the record, both of these

6   affidavits.  You have them marked as D and E.  I will simply

7   mark them as Plaintiff's Exhibits Number One and Two to this

8   hearing.

9         **(PLAINTIFF EXHIBITS ONE AND TWO INTRODUCED AND FILED INTO**

10        **EVIDENCE.)**

11              **MS. BOBADILLA:**  Thank you, Your Honor.

12              **THE COURT:**  You may proceed.

13              **MS. BOBADILLA:**  Your Honor, Butch Oustalet,

14   Incorporated filed a complaint for injunctive relief.  The

15   basis of the complaint for injunctive relief arises out of the

16   controversy within -- by Mr. Leggett, a current employee of

17   Butch Oustalet, Incorporated here in Gulfport, Mississippi.

18   Mr. Leggett, by counsel present before you, Ms. Golden,

19   submitted on October the 6th of 2008 a letter which indicated

20   that Mr. Leggett was subjected to a hostile work environment

21   due to racial discrimination while employed by Oustalet as a

22   salesperson.  As a point of fact, Your Honor, Mr. Leggett is

23   still an employee of Butch Oustalet Ford, Incorporated here in

24   Gulfport; however, he has chosen to take medical leave and

25   indicated that he is unable to work due to stress conditions.

1    The letters that Ms. Golden submitted on behalf of Mr. Leggett

2    indicated that the subject matter of these complaints dealt

3    specifically with racial discrimination and hostile work

4    environment and noted in those letters which we have attached

5    to the complaint for injunctive relief as arising out of Title

6    VII, United States law, regarding discrimination and protection

7    of race and gender.  She also specifically indicated that if a

8    demand for $15 million was not paid for to resolve Mr.

9    Leggett's claims, then she, on behalf of Mr. Leggett, would

10   file an EEOC complaint and also release this alleged videotape

11   to the media.

12       In response to her demands on behalf of Mr. Leggett,

13   counsel, local counsel, Mr. Salloum's office, contacted Ms.

14   Golden, denied the allegations, and indicated that an

15   investigation must be conducted in order to determine whether

16   or not Mr. Leggett's claims had any foundation whatsoever.  The

17   importance of the underlying claims is that Mr. Leggett's

18   notice to the employer allegedly of these claims first came in

19   the October 6, 2008 letter by his lawyer.  He had never made

20   any complaints regarding any racial discrimination, hostile

21   work environment, sexual remarks, any of those things, while he

22   was employed or continued to appear at work with Butch

23   Oustalet, Incorporated.  It wasn't until he retained a lawyer

24   and then levied a $15 million demand, or extortionist demand,

25   against Butch Oustalet Ford to resolve these claims.

1              **MS. GOLDEN:**  Objection to the word "extortionist,'

2    Your Honor.

3              **MS. BOBADILLA:**  Thereafter --

4              **MS. GOLDEN:**  I have an objection to the word

5    "extortionist."  The demand letter was sent as customary to all

6    cases.  A demand letter is always appropriate to be sent prior

7    to filing any type of action to see if the parties can resolve

8    it.  That has always been the procedure that my office has

9    followed.  I don't rush to court.  That is not one of the

10   things that I do.  So I object, emphatically object, to the use

11   of the term "extortionist."

12             **THE COURT:**  All right.  As a matter of courtesy --

13             **MS. BOBADILLA:**  Yes, Your Honor.  I will contain my

14   remarks.

15             **THE COURT:**  Let us attempt to use a word -- I am

16   aware of the allegations in the petition, and I have no opinion

17   one way or the other about whether the alleged conduct

18   constitutes extortion or not, but as a matter of courtesy,

19   courtesy to Ms. Golden, I think we can find another word to

20   use.

21             **MS. BOBADILLA:**  Yes, Your Honor.  Thereafter, as

22   noted by Mr. Oustalet's affidavit, he, on behalf of the

23   dealership, conducted an investigation, as it was his first

24   notice on October the 6th alleging these allegations.  From his

25   review and from his investigation of his employees, he did not

1    find that Mr. Leggett's claims of racial discrimination or

2    hostile work environment were well founded.  Thus, on

3    December 15th of 2008, Mr. Leggett, myself, and a

4    representative from the employer, Mr. Tommy Whitman, met in a

5    conference in order to respond to Mr. Leggett's complaints and

6    to find how a resolution might be made.  In that conference Ms.

7    Golden, on behalf of Mr. Leggett, indicated that if by

8    December 15th, 2008, a resolution to the claims was not made,

9    that thereafter the demand would rise to $177 million.

10   Thereafter, on behalf of Butch Oustalet Ford, noting the

11   enormous amount of the demand and their investigation

12   indicating that these claims were unfounded, we requested an

13   extension of time in order to respond more fully to her

14   demands.  That extension was granted until December 19, 2008,

15   thereby indicating that if a payment or response was not made

16   to these claims by today, December 22, 2008, by 6:00 p.m., then

17   this alleged racially charged videotape would be released to

18   the media, including CNN, Barbara Walters, et cetera.

19        Now, that is why, Your Honor, we have brought forth a

20   complaint for injunctive relief, specifically requesting that

21   the harm that we perceive would be made against Butch Oustalet,

22   Incorporated, that Mr. Leggett be restrained from releasing

23   this videotape and the substance of this litigation or

24   anticipated litigation into the media.  Now, in so doing, Your

25   Honor, we understand that our burden is to satisfy whether or

1    not, under the factors for injunctive relief, whether or not we

2    would potentially be successful on the merits of this claim.

3          Of importance and supported by the affidavits of Mr. Larry

4    Clark and Butch Oustalet, this alleged videotape was made well

5    over 20 years ago.  Mr. Leggett is a long-time Butch Oustalet

6    employee who in fact saw this videotape some 20 some odd years

7    ago, never filed a complaint then, never made any issue

8    regarding alleged racial discrimination or otherwise.  It was

9    not again until October 6, 2008 that he submits that on

10   July 25, 2008, someone placed this videotape on his desk.  One,

11   Your Honor, we would submit, in response to an EEOC complaint,

12   which the employee must and should submit in order to exhaust

13   all administrative remedies prior to bringing judicial action,

14   that his complaints of alleged racial discrimination would be

15   time-barred because that videotape that he rests this case on

16   is well over 20 years ago, and he has seen it that long ago.

17   Thus, he would not be within the 180 days that he must file his

18   complaint within.

19         Now, if in fact this Court indicates that the alleged

20   placing of this videotape on his desk on July 25th of 2008

21   brings this as some sort of continuing violation, then we would

22   submit that the act of placing the videotape which he has

23   already seen would not constitute a violation under the hostile

24   work environment and under Title VII.  Thus, again, it would

25   not bring -- his claims would not be brought forth and rise to

1    the level of a continuing violation wherein he can circumvent

2    the statute in which he must file his EEOC complaint.

3         There is substantial -- there is a substantial threat that

4    irreparable harm would be done to this dealership if in fact

5    Mr. Leggett and Ms. Golden were allowed to dismiss or

6    disseminate this videotape throughout the media.  Butch

7    Oustalet Ford is a company that has, and through the affidavit

8    of Mr. Oustalet, has taken an alleged complaint by Ms. Golden,

9    investigated it, determined that it is not well founded, and

10   should be able to respond to these allegations under the EEOC

11   and those administrative remedies.  What Mr. Leggett and his

12   counsel are attempting to do is to basically go around the

13   system that has already been established for these types of

14   complaints.

15        **MS. GOLDEN:**  I object to that statement.  That is not

16   correct, and that is not what the letters state, and I object

17   to that.

18        **MS. BOBADILLA:**  Your Honor, I don't believe that

19   anything I have said is -- and I have tried to curtail my

20   remarks, so I believe that she has an opportunity to respond.

21        **THE COURT:**  Ladies, that is not -- it won't be

22   helpful.  I am going to let you, Ms. Golden, respond,

23   obviously, to these arguments.  I am still concerned as to why

24   this is before this Court, and I am still waiting to hear where

25   the jurisdiction lies.  So let's go ahead and proceed, make a

1    complete record, and Ms. Golden, you know that I will give you

2    a full opportunity to respond.

3           **MS. BOBADILLA:**  So, Your Honor, obviously, in

4    reference, just going back to the elements of injunctive

5    relief, the harm to the plaintiff will be substantially

6    outweighed if in fact this videotape is allowed to be

7    disseminated.  If Mr. Leggett is allowed to go through the EEOC

8    process, there is no harm that comes to him aside from

9    exercising the rights that the government has set up for him.

10   And also, granting the injunction will not disserve the public

11   interest in any way.  We are specifically talking about a

12   private matter between an employer and employee based on Title

13   VII claims; however, it does not involve the public interest in

14   any way.  Thus, Your Honor, under the elements of injunctive

15   relief, I believe that we have met those requirements.

16          Addressing more fully the jurisdictional issues, the basis

17   of the complaints within which Mr. Leggett has brought these

18   claims deals specifically with alleged Title VII violations

19   which are federal -- which are protected by the federal law.

20   Thus, because of the federal jurisdiction claims that he brings

21   forth, this controversy between the employer and the employee

22   are based in federal question jurisdiction.  What the defendant

23   would like to do is to not avail himself of the jurisdiction of

24   the EEOC and the Federal Courts but rather try this case in the

25   media before it actually gets to the venue where it should be,

1    and thus what we have asked before this Court is to enjoin them

2    from doing that.  In fact, she has made a judicial admission

3    that this is the subject, this claim is the subject of the

4    EEOC.  It is also Title VII claims.  Thus, based on the letter

5    submitted in our complaint for injunction, based on the

6    affidavits that indicate that this controversy deals

7    specifically with federal question jurisdiction, then, Your

8    Honor, we submit the jurisdiction is proper here before this

9    Court and that the plaintiff is entitled for injunctive relief.

10   If in fact the Court submits regarding other procedural issues,

11   we would request, as we have done earlier before argument, to

12   submit in writing our opposition and/or amendment to the

13   complaint prior to it being dismissed based on these issues or

14   based on the allegations or complaints against the actual

15   jurisdictional requirements.  We submit that we have already

16   met those, but to the extent that this Court feels that

17   procedural deficiencies are present, we ask for leave to amend

18   our complaint.

19           **THE COURT:**  Well, it is my understanding that the

20   Court has jurisdiction of a civil rights complaint under Title

21   VII only because the EEOC has passed upon it and has given the

22   plaintiff an opportunity to file a complaint, and that gives

23   them the cause of action.  But that has not occurred here yet.

24   Mr. Leggett has not brought a claim before the EEOC.  There is

25   no determination by the EEOC.  There is no right to sue letter.

1   There is nothing here other than the possibility or the threat

2   that Mr. Leggett may bring a claim which he may do.  Why does

3   that -- under what circumstances would that now create a

4   question, a federal question which gives this Court

5   jurisdiction to do anything?

6          **MS. BOBADILLA:**  Your Honor, we submit that Mr.

7   Leggett has made a judicial admission that that is in fact --

8   that is in fact the avenue in which he should follow.  It is a

9   Title VII matter.  It is also a matter that should be brought

10  forth before the EEOC.  Mr. Leggett should be following those

11  regulations.  And to come in and, one, not file before the

12  EEOC, and then indicate that he should be shielded from federal

13  jurisdiction because he will not file his EEOC, I think goes to

14  basically disserve this plaintiff, because if, in fact, he

15  should file an EEOC complaint and there we could actually

16  defend these claims within the EEOC jurisdiction and

17  parameters, then that would be one avenue, but he has failed to

18  do that.  So to not allow us to come in and to litigate these

19  claims, which are, as judicially admitted by Mr. Leggett, Title

20  VII claims and in fact subject of federal question

21  jurisdiction, then it basically is a circular argument wherein

22  they will not file their complaint but then say we should not

23  be before this Court dealing with Title VII issues.  So thus,

24  Your Honor, we submit that we should be here because this is

25  what the controversy, the Title VII and the federal question,

1    that is what the controversy entails.  It is based on federal

2    question.  This controversy between the employer and the

3    employee deals specifically with federal question, deals

4    specifically with Title VII.

5         **THE COURT:**  Perhaps the underlying claim, but what is

6    before this Court is your effort to prevent the dissemination

7    of an embarrassing tape.

8         **MS. BOBADILLA:**  Which arises out of alleged Title VII

9    violations.

10         **THE COURT:**  All right.  Anything else?

11         **MS. BOBADILLA:**  Thank you, Your Honor.

12         **THE COURT:**  Thank you.  Ms. Golden?

13         **MS. GOLDEN:**  May it please the Court.  Good morning,

14   Your Honor.

15         **THE COURT:**  Good morning.

16         **MS. GOLDEN:**  I would like to first, if I may, address

17   and defend the attempts to amicably resolve a judicial claim

18   that my client has against his employer.

19        My client came to my office in September of 2008 with a

20   videotape in his hand.  He stated that that tape was placed on

21   his desk on or about July 25, 2008.  When we watched the tape,

22   that tape showed very despicable statements, racial epithets,

23   sexual innuendoes that is far worse than the tapes in the

24   Texaco case.  If Your Honor can recall, in the Texaco case the

25   tapes referred to African-Americans as black jellybeans, used

1   racial epithets against African-Americans, and it also

2   disparaged the Hanukkah and Kwanzaa holidays.  The reason why

3   Mr. Leggett placed the amount of demand in the demand letter,

4   and we both agreed, because we researched, and I researched,

5   the plaintiff -- I did research, and there was a plaintiff in

6   the Morgan Stanley case.  The plaintiff's name is Allison

7   Sheflin.  That plaintiff was awarded $12 million in her claim

8   against her employer, and it was the highest -- it was the

9   largest any individual has ever received in a discrimination

10  settlement.  So we looked at that case to make a determination

11  as to what amount we should ask for for Mr. Leggett.  We didn't

12  just pull that figure from the sky.  Secondly, we went to and

13  researched the Texaco case.  If you can recall, Texaco was a

14  class action case, and it settled for $176 million in a class

15  action.  So Mr. Leggett and I discussed the possibility that if

16  they did not want to resolve this case, we would open the

17  case -- when we filed the lawsuit we would seek class

18  certification and open the case up to class action status, and

19  that is where the $177 million was derived.  So I take offense

20  to anyone who is stating that we are trying to extort money.

21      We think the tape is of public interest.  I find it

22  amazing that counsel opposite did not offer the tape to Your

23  Honor to review in camera proceeding.  In my opinion, it would

24  be very difficult for the Court to even rule on the substantive

25  nature of the tape without perusing the tape.

1    **THE COURT:**  Well, I take you at your word that it is

2    as you have described it and as you have represented it.  I

3    take you at your word.

4    **MS. GOLDEN:**  And it is my practice, Your Honor, in my

5    20 something years of practice, I have always submitted a

6    demand, a letter of demand.  That is what I do.  I am an

7    attorney.  I send a demand to see if we can amicably resolve

8    the issues.  I have my investigation, I have my set of facts.

9    If the case cannot be resolved, then I proceed to court.  And

10   in my letters that I submitted, I emphatically told them, if

11   the case cannot be resolved, my client will file an EEOC and he

12   will proceed to court.  Now, if my client did not have a

13   justiciable claim, then I could see a concern for anybody

14   requesting money if they don't have legal remedy in court, but

15   I have just presented you two federal cases where the

16   plaintiffs received millions for the alleged discrimination

17   that occurred in their complaint.

18   Mr. Anthony Leggett is a victim.  He is not the

19   perpetrator.  And before I get into the substantive, I want to

20   argue my jurisdictional, my motion to dismiss, if I may.

21   **MS. BOBADILLA:**  Your Honor, if I may, I object to the

22   argument of the motion to dismiss based on your earlier ruling

23   allowing us to oppose it in writing and thereafter, if this

24   Court chooses, setting it for hearing.

25   **THE COURT:**  I will allow Ms. Golden an opportunity to

1    argue her motion.

2              **MS. GOLDEN:**  Thank you.  Your Honor, we believe that

3    Butch Oustalet does not have a federal question before the

4    Court.  In order for any litigants to bring a matter into

5    Federal Court, there must be an issue of a violation of either

6    a Federal Constitution, United States Constitution, or a

7    treaty, or a federal common law, or some type of federal

8    statute that will allow them an avenue to have standing and

9    jurisdiction, the Court have jurisdiction.  In this particular

10   case the plaintiff filed what we call, what they labeled a

11   complaint for injunctive relief.  And in that complaint the

12   summons was attached, but there is no such animal called a

13   complaint for injunctive relief.  What this really is, this

14   legal instrument is really an application for injunctive

15   relief, or a motion for injunctive relief, but they couched it

16   in the terms of a complaint.  But in the complaint they list --

17   the only statute that they list stating that jurisdiction is

18   conferred upon the Court is 28 U.S.C. 1331, which is the

19   federal question jurisdiction.  Well, there is no federal

20   question presented in this entire document.  They are not

21   saying that Mr. Leggett has committed any type of federal

22   statute violation or federal law violation or a treaty

23   violation against Mr. Oustalet.  That is not stated anywhere in

24   here.  They have relied heavily on 42 U.S.C. 2000e Title VII

25   statutes as to their premise and why this Court should have

1    jurisdiction.  However, Mr. Leggett, that case, the future case

2    of Leggett versus Oustalet, a Title VII claim, has not yet

3    occurred and will not occur until 2009 because Mr. Leggett has

4    to still file his EEOC charge of discrimination.  And we, based

5    upon our count, he has until January of 2009 before his 180

6    days expires.  So there is no Title VII case right now pending

7    before Your Honor, and that is the subject of our main reason

8    for our dismissal.  There is no Title VII complaint where Butch

9    Oustalet is the plaintiff and Mr. Leggett is the defendant.

10   That does not exist.  This is the only document that is before

11   the Court, and they are trying to get an injunction based upon

12   future litigation.

13       So we submit to the Court that Federal Court does not have

14   jurisdiction over Mr. Leggett because there is nothing in these

15   pleadings that are before the Court that would give rise to a

16   federal question.

17       Secondly, the application itself is not supported by any

18   type of sworn statement.  And this makes some bold allegations

19   in this alleged complaint, and it is not sworn to.  And we

20   submit that if they are going to make bold statements, it

21   should have been sworn to by counsel opposite, which it was

22   not.  Therefore, this application is asking the Court to enjoin

23   my client of his constitutional First Amendment right to go to

24   the media, but yet they have not sworn to this 13 or so page

25   document.

1     And then I also argued in my motion that they had no

2 supporting affidavits attached.  When Mr. Leggett was served

3 with this document, they had no supporting affidavits to

4 support their claim.  Well, I just received the opposing

5 affidavits this morning at 10:55 a.m., five minutes before the

6 time for the hearing.  Now, I want to object to these

7 affidavits.  I don't believe Larry Clark has any credence to

8 give any type of sworn statement.  I believe he is a racist.  I

9 believe he has judicial animus against --

10     **MS. BOBADILLA:**  Your Honor, may I object.  I was

11 instructed earlier, Your Honor, respectfully, not to engage in

12 such comments, and I respectfully request that counsel opposite

13 also --

14     **THE COURT:**  I think that is a fair request, Ms.

15 Golden.  We don't need to refer to anyone by any labels here

16 today.

17     **MS. GOLDEN:**  Secondly, I object to these affidavits

18 because with Mr. Clark's affidavit number two, they said Mr.

19 Leggett's discrimination claims are primarily based upon the

20 videotape.  That is untrue.  Mr. Leggett has other evidence

21 that he will present in his EEOC charge of discrimination that

22 is other than the videotape.  That is not the only evidence

23 that he has.  So that is an untrue statement.  Likewise, it is

24 an untrue statement in Exhibit E, or Exhibit Two, number four,

25 it also says that Mr. Leggett's discrimination claims are

1   primarily based on the videotape.  That is also untrue.  But

2   they want me to argue and defend a case that is not yet ripe,

3   that has not been processed through the EEOC yet.  And I think

4   it is unfair to Mr. Leggett to have him to come in and to

5   defend all of this evidence when he is not yet required to do

6   so.  Mr. Leggett has retained my services to file an EEOC on

7   his behalf, and I will represent to the Court that we will do

8   so prior to the expiration of his 180 days.

9        Mr. Leggett, after my review -- Your Honor knows I have

10  been doing these type of cases for a long time now, after

11  reviewing Mr. Leggett's claims, he in fact has justiciable

12  claims that he intends to take forward against Mr. Oustalet.

13       Now, another point that I want Your Honor to consider,

14  Butch Oustalet, through the Ford executives, are on this

15  videotape.  The tape, if it is released, is extremely

16  embarrassing, it is, but they want the Court now to come in and

17  protect them from this embarrassing tape.  And why should the

18  Court give them such protection, when they are the ones who

19  made the tape and distributed the tape?  Someone distributed

20  the tape even to Mr. Leggett.  So now that we are proceeding on

21  this legal course, now they want you to rush in and stop us.

22  And I have a serious problem with them coming in here with the

23  lack of jurisdictional argument.  I don't believe they met that

24  threshold jurisdictional standard.  And an application for an

25  injunction should be supported by affidavits that will show

1     unto this Court a clear and convincing and compelling reason

2     for the Court to even grant it.  And that is getting into the

3     substantive part.

4          Also, they failed to request a bond and security, and

5     according to Federal Rule of Civil Procedure 65(c), that if --

6     before this Court can issue a preliminary injunction, security

7     must be posted, unless they are the United States Government or

8     an agency of the United States Government.  And as of this date

9     they have not posted bond, nor have they requested it in their

10    document that bond be waived.  So there are a lot of procedural

11    flaws in this application for injunctive relief.

12         And then, finally, they are -- I have never seen a case

13    where you file for -- you open the file, a case in court, with

14    the application for injunction.  They should have filed a

15    complaint first and then predicated upon that complaint

16    simultaneous to or shortly thereafter filed an application for

17    injunctive relief, not filed a complaint for injunctive relief.

18    It muddies the water, and that is what they did.  They called

19    it a complaint, but it is not a complaint.  It is simply an

20    application for injunctive relief, and there is no complaint.

21    We submit to the Court there is no complaint, the complaint

22    which sets forth the allegations with specificity, showing the

23    federal statute that has been violated, and that has not

24    occurred in this case.

25         The Court should also know that the reason why Mr. Leggett

 1   has not filed his EEOC as of this date, although he still has

 2   time in the future, because counsel opposite, we were engaging

 3   in settlement negotiations.  She would say, *well, give us a*

 4   *little more time, I think we can resolve this, give us a little*

 5   *more time, I think we can resolve this,* and they have requested

 6   three or four extensions throughout, since from October to now.

 7   So when they requested, she also stated, counsel opposite,

 8   *well, I think your demands -- your demands are higher than our*

 9   *policy limits, I believe Lloyds of London is also looking into*

10   *seeing whether or not they are going to join in to try to meet*

11   *your demands.*  So if -- and again, Your Honor, if a case can be

12   resolved confidentially and amicably without having to file a

13   lawsuit, that is what I do.  That is what I do for a living.

14   Mr. Leggett has a constitutional right to go to the media.  He

15   has a right to do it.  It doesn't matter how embarrassing the

16   tape may be.  And he still wants to go to the media because he

17   thinks the public needs to know how these Ford executives think

18   about their African-American customers.  He also, in this

19   Court, when I represented Chevron -- when I represented

20   Reginald May versus Chevron, we had photographs that we

21   obtained in evidence that were at least 40 years old of Chevron

22   executives wearing Ku Klux Klan hoods over their faces with the

23   Chevron emblem on the hood.  Well, it was Judge Bramlette who

24   presided over that case, and the same arguments came about as

25   to whether or not my clients, Mr. Reginald May and John Brown,

1    should go to the media here and expose the corporation for what

2    they really were.  And Judge Bramlette showed that that, those

3    photos, even though they were 40 years old, could establish a

4    pattern and a practice of racial animus against my clients.  So

5    this tape, although it is 20 years old, it does show and it

6    will show the racial animus that Larry Clark, Buddy Feeney have

7    against my client and other African-American employees who work

8    for the company, and for the African-American customers to

9    which they serve.

10       Now, again, getting back to this tape, I am just amazed

11   that they are asking you to restrain us from releasing this

12   tape, and they have not brought the tape forward.  But, Your

13   Honor, I knew they weren't going to request for you to see the

14   tape, but I brought the tape, and I am going to request an in

15   camera proceeding.  It is a 17-minute tape that will allow you

16   to look at the tape and see it, and then you will understand

17   why my client is upset and angry and disturbed over that tape.

18   I am an African-American female, and when I saw that tape I was

19   deeply offended, highly upset, over what these people have said

20   about my people, and what they have said about me, and what

21   they have said about females.

22       **MS. BOBADILLA:**  Your Honor, I apologize for this

23   intrusion, but I truly believe that counsel's arguments are

24   going way beyond the scope of her motion and/or opposition.

25       **THE COURT:**  I told you, Ms. Golden, I take you at

1    your word, and from the enthusiasm that both you and counsel

2    for the plaintiff have exhibited here today, I have no doubt

3    that the tape would be extremely embarrassing to one or more

4    parties, and I don't think it would -- I do not think it would

5    be helpful to this Court in trying to evaluate whether it has

6    jurisdiction or not, or whether or not an injunction should or

7    should not be granted to actually be subjected to the content

8    of that particular tape.  I take you at your word that it is

9    racially insensitive and that it is a great embarrassment to

10   one or more parties.  What I am concerned with here more than

11   anything else is whether or not this Court has the authority to

12   do anything, and some underlying issues as well.  So let's try

13   to get on with that, and I will leave for another day, perhaps

14   to a jury or for some other judicial tribunal to determine the

15   underlying merits of Mr. Leggett's claim.

16          **MS. GOLDEN:**  Now, Your Honor, also, in the Chevron

17   matter, the Chevron officials were upset as well that their

18   pictures went to the media.  They were highly upset.  But the

19   constitutional right of a plaintiff to take his matter to the

20   media is a fundamental right, and that is a right that Mr.

21   Leggett has.

22          **THE COURT:**  Then why hasn't Mr. Leggett done that

23   already?

24          **MS. GOLDEN:**  Because we were in the middle of

25   settlement negotiations.  He came to me, to my office, in

1    September.  Well, they kept saying, *well, let's see if we can*

2    *work it out, work it out.*  It was only this week, last week, a

3    week from today, that settlement negotiations broke down, and

4    when those settlement negotiations broke down, that is when

5    they ran to the Court and filed this application for an

6    injunction.

7              **THE COURT:**  Well -- all right.  I will let you finish

8    your argument.

9              **MS. GOLDEN:**  So with that, Your Honor, we

10   respectfully request the Court to dismiss this application for

11   injunction.  We don't believe this Court has in re or in

12   personam jurisdiction, no federal question jurisdiction over

13   Mr. Leggett, and that it should be in fact dismissed.

14      And I also want to defend my client's -- the assertions,

15   the underlying assertions that have been stated here today

16   regarding my client.  He has a right to try to settle any

17   matter, and he also has a right, a constitutional right, if he

18   wants to, to go to the media.  If Your Honor -- I am not sure

19   if Mr. Leggett is going to go to the media, but he has a right

20   to defend this application for injunction, and we believe these

21   people are in the wrong court.  Thank you.

22             **THE COURT:**  Thank you, Ms. Golden.

23             **MS. BOBADILLA:**  May I briefly reply, Your Honor?

24             **THE COURT:**  Please be brief because I intend to move

25   quickly.

1          **MS. BOBADILLA:**  Yes, sir.  Your Honor, in the

2     opposition to the complaint for injunctive relief, and then the

3     motion for injunctive relief that is before you, Ms. Golden

4     specifically cited federal cases.  She specifically

5     characterized those not necessarily factually and analogously

6     correct to the complaints of Mr. Leggett, but in fact cited

7     federal cases in order to establish her opposition to our

8     injunctive relief.  I submit that what she has done is again

9     make a judicial admission that this is actually the appropriate

10    court.  She has indicated twice during her argument that her

11    client has a judicial claim, he actually has a judicial claim.

12    What she has in fact stated and admitted is that her client has

13    a claim for Title VII claims, hostile work environment arising

14    from federal question issues.  However, they have chosen not to

15    act on those claims but in fact threaten this particular

16    company with either resolving the claim prior to defending

17    itself before the EEOC or paying either $15 million or

18    $177 million, depending on which day it is.  Thus, Your Honor,

19    what we submit is that she has actually in fact stated that her

20    client has a claim, that the controversy between the employer

21    and the employee arises out of the federal question and arises

22    out of the Constitution.  In fact, she has indicated that her

23    client, though I beg to differ and believe that she is wrong,

24    has a constitutional right to do what he intends to do or has

25    threatened to do to disseminate this tape.  Thus, those

1   arguments in and of themselves admit that this is the

2   appropriate court to be before.

3        Thus, Your Honor, the procedural issues again we have

4   requested to brief in writing.  We have indicated that we filed

5   the motion for injunctive relief.  A bond can be posted today.

6   So as to those procedural issues, those can either be, number

7   one, are not faulted to the actual complaint and/or can be

8   corrected.  And we specifically indicate that through counsel's

9   arguments, which she has indicated that her client does in fact

10  have a claim, that claim is born on a federal question in Title

11  VII.

12        **THE COURT:**  I am going to give you until 1:00 to

13  convince me of that, to provide this Court with some case

14  authority, some statute, or some ruling by a Court of Appeals

15  somewhere that this Court would have jurisdiction to rule on an

16  injunctive matter where no underlying claim has ever been

17  filed.  You bring me something that convinces the Court that,

18  at least a prima facie showing that I have got jurisdiction,

19  and we will proceed; otherwise, I am very suspicious that this

20  Court has jurisdiction to hear this matter.  I am going to give

21  you until 1:00.

22        **MS. BOBADILLA:**  And, Your Honor, would you like me to

23  hand deliver it, Your Honor, submit it via fax?  How would you

24  like it done?

25        **THE COURT:**  If you have got a case that confers

1    jurisdiction on me, I want to see it.  You can either give me

2    the citation or bring the case with you, but I am truly

3    unpersuaded that I have the authority to do anything in this

4    case in the posture in which it is in today.

5         What we have here, quite frankly, is that Mr. Leggett is

6    in possession of a tape that is potentially embarrassing to

7    your clients.  Your clients do not want that tape disseminated

8    to the media.  So the question here is, no matter what the

9    potential underlying claim may be, is whether I have got any

10   underlying authority to stop them from doing what you don't

11   want them to do, and that is to provide to the media, for

12   whatever value the media may find in it, a potentially

13   embarrassing tape recording.  And I want to know what authority

14   I have got to intercede on behalf of the plaintiff and where

15   that authority comes from.  You brought it as a federal

16   question.  There must be a statute or there must be some case

17   interpreting a statute which would give me the authority to do

18   what you ask.

19             **MS. BOBADILLA:**  Yes, Your Honor.  We will submit

20   that.

21             **THE COURT:**  We will reconvene at 1:00.

22        **(NOON RECESS FROM 12:05 P.M. UNTIL 1:04 P.M.)**

23             **THE COURT:**  Ms. Bobadilla, were you able to find some

24   authority for this Court to entertain this motion?

25             **MS. BOBADILLA:**  Your Honor, if I may approach with a

1   copy of the case, sir.  In the interim, from approximately

2   12:00 to this time, I made a scurried search in order to

3   determine additional authority.  I reurge the fact, Your Honor,

4   and I thank you and appreciate the fact that you granted us the

5   opportunity to actually file a written response to the motion

6   to dismiss that Ms. Golden has filed.  However, in the interim,

7   in regard to your order, we found the United States Court of

8   Appeals Fifth Circuit *Stewart versus Dunn* cited as 363 F.2d

9   591.  In this discussion of the case -- and, Your Honor, I do

10  submit that I have had an opportunity to review it; however, I

11  certainly would wish a greater opportunity to review Ms.

12  Golden's arguments and respond to them in writing and also

13  submit before this Court on an issue of jurisdiction in a

14  response in writing.  However, on page eight it indicates that

15  "The law is clear that pending a decision on the question of

16  jurisdiction, a District Court has the power to issue a

17  temporary restraining order in order to preserve existing

18  conditions," and string cites *United States versus United Mine*

19  *Workers of America* and other cases therein.  I submit, Your

20  Honor, under this case, the cited cases and others, that this

21  Court does have the power, while it entertains whether or not

22  it has jurisdiction over this complaint for injunctive relief

23  and the subsequent motion for injunctive relief, to issue a

24  temporary restraining order basically allowing for the existing

25  conditions as is, i.e., that Mr. Leggett not have disseminated

1   this tape to the public, or the substance of this litigation,

2   or anticipated litigation.

3         Thus, I respectfully, number one, Your Honor, move and

4   reurge your earlier allowing us to file a response, a written

5   response to the motion to dismiss, and also, citing this case,

6   indicate that you have the ability, and we would request that

7   you issue a temporary restraining order in order to preserve

8   the existing conditions.  At this point my client is faced with

9   a threat and ultimatum.  And I don't mean to overstretch the

10  definitions, in order not to be inciteful, but it is facing,

11  one, a $15 million demand or dissemination to the media, or a

12  $177 million demand if it does not resolve this claim.  Thus,

13  based on Ms. Golden and her client's threats and otherwise, and

14  the cases, and what we have submitted to you in argument,

15  affidavits and otherwise, we submit that we respectfully should

16  be granted at least a temporary restraining order, allowed to

17  properly brief the motion to dismiss and oppose same, and/or

18  make any procedural corrections to our initial filing.  Thank

19  you, Your Honor.

20        **THE COURT:**  Ms. Golden, do you wish to respond?

21        **MS. GOLDEN:**  Yes, sir.  Again, Your Honor, I take

22  exception to the characterization of threats.  Again, what I

23  surmise, I submitted demand letters, the parties engaged in

24  settlement negotiations, I have spoken with counsel opposite

25  several times trying to resolve this case, and not once does

1    she tell me that she or her client felt threatened in any way.

2    My first time hearing about any type of threat was when they

3    filed this application for a preliminary injunction.  The

4    conversations that we have had with opposing counsel have been

5    amicable.  They have been cordial.  They have stated, *let's see*

6    *what we can do to try to resolve the claim.*  So this is simply

7    an attempt to settle a justiciable claim, and they want to make

8    it seem like it is more than what it really is, but it is not.

9    I take offense to counsel opposite coming in here on the record

10   trying to characterize my client and me in a manner that is

11   disparaging.  Again, he has a right to go, a constitutional

12   right to go to the media.  That is his First Amendment right.

13   He has a right to try to settle a claim before proceeding to

14   Federal Court.  Now that we see that they are not interesting

15   in settling, then he is going to exercise his right to go to

16   the EEOC and exhaust his administrative remedies.

17        Now, I just received this case, Your Honor, and just a

18   cursory review of it, I want to point out a couple of things to

19   Your Honor.  In this case, this case is not like the case at

20   bar at all.  On page three in the second column, second

21   paragraph, where it begins with "The complex and confused

22   events", it says that the party filed a complaint, and the

23   issue, we have a diversity jurisdictional issue in this case.

24   This case involved *Hyde Construction Company* in the Mississippi

25   District Court against *Koehring Company*, which is a nonresident

1    corporation.  That would invoke diversity jurisdiction.  So the

2    Court in this case had diversity jurisdiction to determine and

3    discuss the contractual issues involved in this case.  There is

4    no diversity jurisdiction issue in the case at bar.  In the

5    case at bar, my client is a Mississippi resident, and Butch

6    Oustalet Incorporation is a Mississippi corporation.  So

7    diversity jurisdiction is not here.

8        The reason why the judge could issue a temporary

9    restraining order in this case is because the underlying -- he

10   had an underlying jurisdictional basis, and that was the

11   jurisdictional -- diversity jurisdiction.

12       Secondly, now the plaintiffs, when they served my client,

13   they served upon him a complaint for an injunction.  They were

14   seeking a permanent injunction.  They were not seeking an

15   application for temporary restraining order.  Under Rule 65

16   there are certain requirements one must take if they are

17   seeking a temporary restraining order.  They "must have

18   specific facts in an affidavit or verified complaint clearly

19   showing that immediate and irreparable injury, loss, or damage

20   will result to the movant before the adverse party can be heard

21   in opposition, and the movant's attorney certifies in writing

22   any efforts made to give notice and the reason why it should

23   not be required."  Opposing counsel didn't do this.  They want

24   you now to issue a temporary restraining order, but she did not

25   sign a verified pleading, she did not submit an affidavit to

1    this Court as to why the Court should -- she didn't articulate

2    with specificity in a sworn affidavit the immediate and

3    irreparable harm, and because of that, then this Court -- it

4    goes back to the original issue this morning.  If this Court

5    doesn't have federal question, or if it doesn't have -- if this

6    Court doesn't have diversity jurisdiction, then it cannot issue

7    any orders over Mr. Leggett.  The Court does not have the power

8    to issue an order over Mr. Leggett if a federal violation such

9    as what we mentioned, if it doesn't exist, and it is not in

10   these pleadings.  The pleadings, again, are fatally flawed.  I

11   would consider them DOA, dead on arrival.

12       **MS. BOBADILLA:**  Your Honor, I apologize for the

13   intrusion.  We were here in order to determine whether or not

14   there was a case that I could submit to you.  This is argument

15   that I believe that we have heard this morning, and I believe

16   that I should be, again, allowed to respond to her in writing

17   within the ten days allowed.  This particular case shows that

18   this Honorable Court has the power to issue a restraining order

19   pending the review of its jurisdiction.  Now, I don't want to

20   belabor the Court, but what she is basically doing is arguing

21   this all over again, without allowing me time to respond in

22   writing for that, Your Honor.

23       **THE COURT:**  You may proceed.

24       **MS. GOLDEN:**  A temporary restraining order is only

25   good for ten days.  So to restrain the defendant at all, we

1   submit that the Court doesn't have the jurisdiction to restrain

2   the defendant for one day, let alone ten days.  Again, this

3   underlying case, you have the complaint that was filed, and you

4   have diversity jurisdiction.  They haven't filed a complaint.

5   At best what you can call what they filed is an application for

6   an injunction.  Where is the federal question?  Where is the

7   complaint?  There is no complaint.  They have called it a

8   complaint, but it is not a complaint.  It is an application for

9   permanent injunction.

10       So based upon that, Your Honor, their pleadings are

11  fatally flawed, and we pointed that out this morning.  And the

12  Court does not have jurisdiction, and this case does not give

13  this Court jurisdiction over Mr. Leggett because the facts in

14  this case are totally different.  There is no diversity

15  jurisdiction here, and if it was, then it would be different,

16  but we don't have a diversity jurisdiction argument in this

17  case today.  And I am not trying to tell them how to practice

18  law, but we are in the wrong court.  Thank you.

19       **THE COURT:**  Thank you, Ms. Golden.  Anything else on

20  behalf of the plaintiff?

21       **MS. BOBADILLA:**  Your Honor, again, at this point we

22  believe that the motion to dismiss, as earlier ruled on by this

23  Honor, we should be allowed to specifically brief and respond

24  to, within the procedure, the written responses to this motion

25  to dismiss.  To the extent that we believe that this Court does

1   have the power to issue a temporary restraining order while it

2   considers its jurisdiction, we submit the case before you.   I

3   appreciate that it is a jurisdictional -- diversity

4   jurisdictional issue; however, the actual ruling held within

5   this indicates that the Court has that power.  It is not

6   caveated by "it has that power within diversity jurisdiction."

7   It merely says that the Court has that power to do that and to

8   issue a temporary restraining order.  Thus, I respectfully

9   request that you allow, as you this morning indicated that we

10  could file a written response within the procedural guidelines

11  to this motion to dismiss, and that a temporary restraining

12  order be issued during the time that you are considering your

13  jurisdiction.

14      I beg to differ.  We in fact went ahead and submitted

15  affidavits, sworn affidavits by our clients, which this Court

16  accepted into the record.  They are sworn affidavits.  To the

17  extent that any bond or otherwise needs to be issued, again,

18  that can be done within today's time frame or within the

19  procedural requirements maintained by the request for the

20  temporary restraining order.

21          **MS. GOLDEN:**  Shortly, Your Honor, if I may.

22          **THE COURT:**  Um-hm.

23          **MS. GOLDEN:**  There are strict compliances to Rule 65,

24  and to enjoin my client at all, they have to strictly comply

25  with the Federal Rules of Civil Procedure 65.  They haven't

1    done that, Your Honor.  They haven't even met the basic

2    threshold, and forcing us to come in here today on a short

3    notice, and they have not submitted any facts or any

4    affidavits.  It is not just affidavits from others.  It is

5    incumbent upon the attorney that is filing it to file an

6    affidavit, and she failed to do that.

7         And then, again, I believe the basic civil procedure

8    principle is that in order for a judge to issue any order over

9    anyone, whether restricting, denying, or forcing them to go

10   forward, the Court must have and decide jurisdiction before it

11   goes into the merits of any case.  That is a basic premise,

12   whether it is in State Court or Federal Court.  And we submit

13   that this Court does not have jurisdiction over Mr. Leggett,

14   based upon the pleadings that have been presented today.  This

15   Court, this case that they have presented, does not change what

16   was stated this morning in court.  The fact, Your Honor, that

17   that case that they have presented had -- the Court did have

18   jurisdiction, and once the Court says it has diversity

19   jurisdiction, then it can enter orders, whether it be temporary

20   or permanent.  But in this case, there is no jurisdiction, and

21   we --

22        **THE COURT:**  I think what the plaintiff is talking

23   about is that the Court has jurisdiction to consider whether it

24   has jurisdiction.  And while I tend to agree with you, that it

25   is very questionable whether this Court has jurisdiction to

1    entertain the merits of this petition, that what the plaintiff

2    is asking for is some time within which to present briefing on

3    the jurisdictional question and for this Court to maintain the

4    status quo while they do that.

5            **MS. GOLDEN:**  Your Honor, my client is also running

6    out of time.  His time is running.

7            **THE COURT:**  Running out of time to do what?

8            **MS. GOLDEN:**  He wants to file his EEO --

9            **THE COURT:**  That is not part of this -- they are not

10   asking that he be restrained from that.  There is nothing that

11   would prevent Mr. Leggett from walking out of the courtroom

12   today, and I would never take action that would prevent Mr.

13   Leggett from filing a claim with the EEOC, if that is what he

14   wishes to do.  The nature of this petition is to prevent Mr.

15   Leggett from disseminating what has been characterized at best

16   a very embarrassing videotape recording.

17           **MS. GOLDEN:**  And if I may, Your Honor, it goes back

18   to my initial inquiry.  How can the judge enter any order

19   restraining Mr. Leggett's ability to engage in his First

20   Amendment constitutional right when the Court has not reviewed

21   the tape?  I find that -- I just find that -- that would be

22   something that I believe the Court should review in camera

23   before it even determines should it restrain Mr. Leggett.

24           **THE COURT:**  Well, the purpose of restraining Mr.

25   Leggett temporarily would only be for this Court to consider

1   whether it has jurisdiction to ultimately enter an order that

2   enjoins him.  I don't -- while I think that ultimately the

3   burden upon the plaintiff is going to be a difficult hurdle to

4   overcome, I don't see any harm in allowing them a short amount

5   of time within which to brief it.  Besides, it may be good

6   practice in the event that this matter ends up before the Court

7   of Appeals.  I don't want to snap to judgment.

8       I could be wrong on the jurisdictional question.  I don't

9   think, quite frankly, Ms. Bobadilla, that I am, but I will at

10  least give you an opportunity, and I will refer to it as a very

11  brief opportunity, to convince me that this Court has

12  jurisdiction of this matter.  I am very suspicious of that, and

13  I would be -- I will be educated if you are able to provide

14  case authority which would convince me that I need to proceed

15  to the merits.

16      And Ms. Golden, in answer to your invitation to review the

17  tape, it doesn't matter what is on that tape.  If I do not have

18  jurisdiction of this case, then it doesn't really matter

19  whether the tape is good, bad, or ugly.  It will not help me --

20  it will not help me in determining whether or not I have

21  jurisdiction on the merits.

22          **MS. GOLDEN:**  Your Honor, I have spent 23 hours in

23  preparing, from last Thursday until today, I have spent 23

24  hours responding to their -- and researching their "complaint

25  for an injunction."  I am also requesting to be reimbursed my

1    reasonable attorney's fees should the Court find that their

2    application has no merit and they don't have jurisdiction.

3           **MS. BOBADILLA:**  Your Honor, I thank you for the

4    opportunity to brief and oppose Ms. Golden's motion.  Ms.

5    Golden obviously has submitted that this claim, or at least a

6    resolution of this claim, is either worth $15 million or

7    $177 million if my client doesn't do what she requested to do.

8    So thus, I submit that if she believes their case, that to be

9    true, that she has signed on to her client to do her job,

10   whether it takes 25 hours, 26 hours, or otherwise.  I

11   respectfully object to her request.  Nonetheless, I thank you

12   for the opportunity to brief this, Your Honor, and respectfully

13   request that if you do not give me the ten days under the

14   statute, that at least five business days be given.  Thank you,

15   sir.

16          **THE COURT:**  Well, I can assure you that ten days, in

17   my judgment, is too long.  I want to try to be fair, but,

18   unfortunately, the holidays approach, and while I am not

19   unsympathetic to the concept that everyone likes to take some

20   time off on Christmas Eve and Christmas and perhaps the day

21   after, I would like to have this matter resolved.  I don't want

22   it hanging.  And I don't think it is fair to the plaintiff, I

23   don't think it is fair to the defendant, for it to be hanging

24   out there any longer than it has to be.

25          Today is the 22nd, the afternoon of the 22nd.  Can you

1    submit your brief by the morning of the 24th?

2          **MS. BOBADILLA:**  Your Honor, since it was posed as a

3    question, I would respectfully request to be given at least

4    until December 29th to submit.  I will certainly abide by this

5    Court's order, as I have today, however I respectfully request

6    at least to December 29th, which would be one week from today.

7          **MS. GOLDEN:**  Your Honor, we oppose this.  This is

8    their complaint.

9          **MS. BOBADILLA:**  Your Honor, again, I would do what

10   this Court ordered.

11          **THE COURT:**  One at a time, please.  One at a time.

12          **MS. GOLDEN:**  Your Honor, this is their complaint.

13   They are the ones who got out here first and said, we are going

14   to file this injunction.  They need to have their ducks in a

15   row and have everything together when we come to court.  They

16   are the ones who requested this court hearing today.  We were

17   dragged here today to be in court on their complaint for an

18   injunction, and I respectfully submit to Your Honor, my client

19   wants to move on with the process, and this is continuously

20   going on and on, just like how she was doing in the settlement

21   negotiations.

22          **MS. BOBADILLA:**  Your Honor, he can file his EEOC

23   complaint at any time.  I don't believe that we are standing in

24   his way to actually do what he should do under the law.  All I

25   am basically trying to do is to protect our client and do it

1  well.  Again, Your Honor, whatever opportunity you afford me,

2  within reason, we will certainly, which I submit it will be, we

3  will certainly abide by that.  I respectfully requested

4  additional time, but again, whatever your Court's order is.

5          **THE COURT:**  Ms. Golden, I certainly don't want to cut

6  you off from any possible reply that you might have.  Do you

7  wish to have a reply to their briefing on the jurisdictional

8  question?  You have already raised it.

9          **MS. GOLDEN:**  I think I have briefed it, Your Honor.

10  So I don't know what they -- it is hard for me to answer that

11  because I don't know what they are going to say in their

12  memorandum of authorities.

13          **THE COURT:**  That is true, and I don't want to cut you

14  off if you want to reply, but you need to tell me -- if you

15  don't intend to reply, I will rule on what is before me.  If

16  you do want some time to reply, then I want to try to be fair

17  with you, too.

18          **MS. GOLDEN:**  I would like to have time to reply if I

19  so choose.  Your Honor, I may not choose to.  I don't know yet,

20  but I would like to have that opportunity in case --

21          **THE COURT:**  How will I know if you choose not to?

22          **MS. GOLDEN:**  Well, if the judge wants to give me a

23  day or so to respond, I don't object to that.

24          **THE COURT:**  All right.

25          **MS. GOLDEN:**  But I believe we are clear in our motion

1   to dismiss.

2           **THE COURT:**  I think so.

3           **MS. GOLDEN:**  And I really don't think it would be

4   necessary for me to file a reply to their response.

5           **THE COURT:**  Well, once you receive their brief, if

6   you think that you don't need to file a reply, why don't you

7   say so in the form of a pleading, that you do not intend to

8   reply, and that way I can go ahead and rule rather quickly,

9   which is what I would like to do.  I will give the plaintiff

10  until Friday, the 26th, within which to brief the

11  jurisdictional question.

12          **MS. BOBADILLA:**  Thank you, Your Honor.

13          **MS. GOLDEN:**  Your Honor, since you have given them

14  until Friday, the 26th, to submit a response, if I decide not

15  to submit a reply, would the Court be making a decision on the

16  26th or --

17          **THE COURT:**  I will be making it as soon as all of the

18  pleadings are available.  In this day of electronic filing,

19  that could be rather quickly.

20          **MS. GOLDEN:**  Your Honor, I would waive our right

21  then, since the 26th is this Friday, I will waive our right to

22  file a reply to their response.  I think our motion to dismiss

23  is sufficient.

24          **THE COURT:**  Then when I say the 26th, I want the

25  plaintiff to have their response to the motion to dismiss for

1    lack of jurisdiction no later than noon on the 26th.

2             **MS. BOBADILLA:**  Thank you, Your Honor.  Are we free

3    to go, sir?

4             **THE COURT:**  I am not sure.  I am still thinking.

5             **MS. BOBADILLA:**  Your Honor, I thank you for the

6    opportunity to respond in writing until December the 26th at

7    noon.

8             **THE COURT:**  I know it puts a burden on the plaintiff

9    and the defendant as well, but this does not need to be

10   festering any longer than it has to.

11            **MS. BOBADILLA:**  And Your Honor, I do submit that I

12   will not unnecessarily delay.  I will certainly review this as

13   quickly as possible.  My request for additional time was,

14   frankly, to make sure I did the appropriate job that I needed

15   to do.

16            **THE COURT:**  Sure.

17            **MS. GOLDEN:**  Your Honor, if I may, are we continuing

18   this hearing until the 26th?  Because I want to make sure -- I

19   want to understand what the order is going to read, because

20   they were requesting a temporary restraining order, and which

21   we opposed that.  I will submit to the Court, as an officer of

22   the Court, we will not go to the media between now and the time

23   we get the Court's order on the -- since we have been --

24            **THE COURT:**  You would be restrained from doing so.

25            **MS. GOLDEN:**  But my question is, is the order couched

1    in the form of a restraining order, or is the order just for a

2    continuance?

3              THE COURT:  No.  What I am doing is, I am giving the

4    plaintiff an opportunity to respond to your motion to dismiss

5    for lack of jurisdiction.  In the interim, the Court will be

6    considering whether it -- it will have jurisdiction to consider

7    whether it has jurisdiction.  I know that is a funny way to say

8    that, but the cases follow that line.  And once I determine

9    whether or not I have jurisdiction, well, then I will rule one

10   way or the other.  In the interim, then, you are restrained

11   from disseminating this tape recording or -- is it a video

12   recording or a --

13             MS. GOLDEN:  Video.

14             THE COURT:  You are restrained from disseminating the

15   video recording until the Court has had an opportunity to

16   consider whether it has jurisdiction over the complaint at all.

17             MS. GOLDEN:  Okay.  Thank you.

18             THE COURT:  And again, Ms. Golden, I have not made up

19   my mind, and I shouldn't, but I tend to think that it is

20   unlikely that the Court has jurisdiction over this application,

21   but with all deference to the plaintiff, as an officer of the

22   Court Ms. Bobadilla wants to represent her client and wants to

23   be sure that she does it well, and I want to give her that

24   opportunity.

25        Of course, the Court now is in an awful position to be in.

1   There are two intertwining issues here that make this extremely

2   difficult.  The underlying issue, of course, is whether or not

3   the defendant here should be permitted to present to the media,

4   or to any other person, for that matter, a video recording

5   which may be embarrassing to the plaintiff.  There is, however,

6   an underlying issue that is -- that weighs on the Court that is

7   very disturbing to the Court and one which generates some

8   obligation on the part of the Court to do something.  I have

9   reviewed the pleadings, and it is clear from the pleadings that

10  the plaintiff has made some allegations that border on criminal

11  conduct, or at the very least border on unethical conduct on

12  the part of counsel for the defendant.  I have also reviewed

13  the attachments to the petition, and it is apparent from those

14  attachments that, again, there is at least some support for the

15  allegation that there has been some wrongdoing on the part of

16  the defendant, or perhaps even on counsel for the defendant.

17  Ms. Golden, in your letters that you have written to the

18  plaintiff, which you have characterized as an effort to settle

19  an underlying claim, unfortunately you condition or you make a

20  condition to the payment of this 15 million-dollar sum the

21  revelation of evidence to the media or to other individuals.

22  Of course, I, or the Court for that matter, have no difficulty

23  with a plaintiff that has a putative claim making an effort to

24  settle that claim, and to settle it for money, and that is, of

25  course, to settle the underlying claim, but unfortunately,

1   perhaps the language in your letters has gone farther than just

2   settling the underlying claim.  You have made a threat to

3   reveal this embarrassing video recording to the media as part

4   of what you have characterized as a settlement.  That may --

5   and I have no opinion as to how it would come out, but that may

6   constitute some violation which generates in me an obligation

7   to report that to the appropriate authority, and I intend to do

8   so.

9        I express no opinion as to Mr. Leggett's underlying

10  putative claim for violation of his rights.  He has the right

11  to bring that claim, and he certainly has a right to have it

12  adjudicated.  I express no opinion as to the admissibility of

13  this video recording, which may tend to support his underlying

14  claim, but what may be objectionable here is the threat that in

15  the absence of paying money, that the tape would be revealed to

16  the media, and that may have crossed the line.  I leave that

17  ultimate determination, however, to the appropriate executive

18  authorities.  I thought, in fairness to you and in fairness to

19  your client, you should know that I have no alternative but to

20  take that action.  All right.  Anything else on behalf of the

21  plaintiff?

22            **MS. BOBADILLA:**  No, Your Honor.  Thank you.

23            **THE COURT:**  Anything else on behalf of the defendant?

24            **MS. GOLDEN:**  No, Your Honor.

25            **THE COURT:**  Thank you.  You are excused.

1          (HEARING CONCLUDED.)

2

3          CERTIFICATE OF COURT REPORTER

4

5          I, Teri B. Norton, RMR, FCRR, Official Court

6  Reporter for the United States District Court for the Southern

7  District of Mississippi, appointed pursuant to the provisions

8  of Title 28, United States Code, Section 753, do hereby certify

9  that the foregoing is a correct transcript of the proceedings

10  reported by me using the stenotype reporting method in

11  conjunction with computer-aided transcription, and that same is

12  a true and correct transcript to the best of my ability and

13  understanding.

14          I further certify that the transcript fees and format

15  comply with those prescribed by the Court and the Judicial

16  Conference of the United States.

17

18

19

20                    S/ TERI B. NORTON, RMR, FCRR
                      OFFICIAL COURT REPORTER
21

22

23

24

25